UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JANET DAVIS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 2:24-cv-02071-CKD

ORDER

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

    Plaintiff, born in 1964, applied on July 27, 2022 for DIB, alleging disability beginning March 1, 2019. Administrative Transcript ("AT") 14, 22. Plaintiff alleged she was unable to work due to stage III lymphoma and congestive heart failure. AT 65. At a hearing before the Administrative Law Judge (ALJ) on February 15, 2024, plaintiff testified that in 2019, prior to the

expiration of her insured status, she had swelling in her legs, fatigue, obesity, and other physical symptoms. AT 50-59. In a decision dated April 17, 2024, the ALJ determined that plaintiff was not disabled.[1] AT 14-23. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2019 through her date last insured of December 31, 2019.
>
> 3. Through the date last insured, the claimant had the following severe impairments: lymphoma and obesity.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work.

6. The claimant has no past relevant work.

7. The claimant was born [in 1964] and was 55 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has at least a high-school education.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 1, 2019, the alleged onset date, through December 31, 2019, the date last insured.

AT 16-23.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting plaintiff's subjective symptom testimony; and (2) the ALJ failed to account for severe obesity in the residual functional capacity determination.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

The relevant period in this case is between March 1, 2019, the alleged onset date, and December 31, 2019, the date late insured. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (for DIB claims, claimant must show she was disabled on or before the date last insured). Thus, the court will focus on evidence concerning that period of time.

    A. Subjective Symptom Testimony

Plaintiff claims that the ALJ erred by discounting her subjective testimony about her symptoms in 2019. Plaintiff was diagnosed with lymphoma in March 2019 and underwent chemotherapy treatment between March 2019 and August 2019. AT 20. Plaintiff asserts that she had "severe symptoms arising from her stage III lymphoma and side effects of chemotherapy," including fatigue and loss of energy, throughout her course of chemotherapy, such that she could not perform medium-level exertional work. (ECF No. 9 at 5.) Even after chemotherapy ended, plaintiff asserts, her symptoms did not improve so much as to allow her to perform medium-level work in 2019, and the ALJ erred in rejecting her testimony to this effect.

Defendant contends that medical records show that plaintiff's symptoms were not severe until January 2020, when she was diagnosed with congestive heart failure and started on

medication for associated fluid retention (edema); she was also diagnosed with deep vein thrombosis in 2020. Defendant argues that the ALJ's credibility finding is supported by evidence that her physical symptoms in 2019 were not as severe as alleged.

The ALJ summarized plaintiff's February 2024 hearing testimony as follows:

> [T]he claimant testified that she could not have done her previous job in 2019, and her condition has not gotten better since then. In 2019, she had problems being on her feet for long periods of time due to edema in her legs. Her doctor told her to . . . take Lasix, and elevate her legs all day long. . . . She had an irregular heartbeat and could not be on her feet. She also had shortness of breath and heart fluctuations and her symptoms lasted about an hour, at least once per month. She said she has used a walker since March 2019, and uses it all the time. She also reported right hip and back pain. Her back pain contributed to her limited ability to be on her feet. Her anemia made her tired, and reduced her ability to be on her feet. She is tired all the time since cancer treatment. . . . She was too weak from the chemotherapy in 2019 to walk, and she used a wheelchair to and from appointments. She could do light household chores. She only went out for doctor appointments.

AT 19-20; see AT 50-58 (hearing testimony). The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AT 20.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the

5

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

    Here, the ALJ first considered the objective medical evidence of impairment in 2019. He noted that plaintiff was diagnosed with stage III lymphoma in March 2019 and underwent six rounds of chemotherapy between March and late July, "at which time her symptoms improved." AT 20. The ALJ noted that, at an August 29 medical visit, "she denied chest pain, shortness of breath, palpitations, [and] leg swelling" and had no edema. AT 20. On October 16, she "denied chest pain and dyspnea [shortness of breath]" and had no lower extremity swelling. AT 20. On November 27, "she denied chest pain, shortness of breath, palpitations or leg swelling" and "reported her energy level was improving"; she had no edema or calf muscle tenderness. AT 20.

    After the DLI, on January 27, 2020, plaintiff was diagnosed with "new onset congestive heart failure with an ejection fraction of 25%[2], at which point she was started on Lasix and congestive heart failure therapy." AT 21. The ALJ quoted a February 6, 2020 treatment note in which plaintiff

> reported she had been feeling fatigued before her lymphoma

---

[2] "Ejection fraction is a measurement of the percentage of blood leaving the heart each time it squeezes. A left ventricle (LV) ejection fraction of about 50% to 70% is categorized as normal." See https://www.mayoclinic.org/tests-procedures/ekg/expert-answers/ejection-fraction/faq-20058286 (last checked Sept. 9, 2025).

>diagnosis and throughout the chemotherapy treatment, but by late August [2019] she was feeling much improved, and felt 'fine up until about 2 week[s] ago when she started getting more fatigued and shortness of breath with activities that were normal for her.'

AT 21, citing AT 833. The ALJ concluded that the objective evidence showed that, while plaintiff experienced fatigue and other side effects during chemotherapy, in August 2019, her symptoms improved, and "she felt fine until January 2020, at which point her symptoms of congestive heart failure began." AT 21; see also AT 18 ("Thus, per the claimant, the fatigue was associated with her chemotherapy treatment, and it resolved by August 2019. There is insufficient evidence to suggest that this condition has had more than a minimal impact on the ability to perform work-related activities for any consecutive 12-month period and it is therefore non-severe.").

Plaintiff argues that, while her congestive heart failure and edema were not diagnosed until January 2020, and her deep vein thrombosis was not diagnosed until February 2020, "these conditions were found to be attributable to a volume overload from chemotherapy [in 2019]" and thus predate the expiration of her insured status. (ECF No. 9 at 5, citing AT 800, 814.) However, the medical examination records and plaintiff's own reports in late 2019 do not show that she suffered severe physical symptoms during that period. In fact, plaintiff repeatedly denied chest pain, shortness of breath, leg swelling, and fatigue in 2019 medical exams, whose results were largely normal. See AT 17 (review of 2019 medical notes, including left ventricular ejection fraction of 67% in March 2019 and plaintiff denying "any complaints" in June 2019). While a five-month course of chemotherapy may indeed be debilitating, it does not meet the 12-month durational requirement for disability under the Act.

After reviewing the objective evidence, the ALJ found that plaintiff's statements about the severity of her symptoms were "not entirely consistent with the evidence." AT 21. He noted that, while plaintiff testified that her medication for edema caused her to urinate frequently in 2019, that medication was not prescribed until 2020. AT 21. Similarly, while she testified that she had to elevate her legs throughout the day in 2019, the evidence for that period indicates that she denied leg swelling multiple times and was not diagnosed with edema until 2020. AT 21.

While plaintiff testified to needing oxygen and a walker in 2019, the evidence does not support these statements. AT 21. Inconsistencies between hearing testimony and prior statements and/or the medical evidence are appropriate to consider in determining a claimant's credibility.

Because the ALJ used the proper process and provided proper reasons, the court defers to his credibility determination.

### B.  Obesity

Plaintiff claims that the ALJ failed to evaluate the functional impact of her severe obesity or account for it in the RFC. Defendant contends that the ALJ duly considered this impairment but determined that it did not cause limitations beyond those reflected in the RFC, and that plaintiff has not shown otherwise.

The ALJ found obesity to be a severe impairment during the relevant period. AT 16. He discussed this impairment as follows:

> SSR 19-2p states that the limiting effects of obesity must be considered when assessing a claimant's residual functional capacity. The claimant has not shown any limitations resulting from obesity which are not already included in the [RFC], and has not shown competent medical opinions and evidence to show how obesity exacerbates the claimant's other impairments or interacts with them.

AT 19.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ considered the severe impairment of obesity, but also relied on two medical opinions finding that plaintiff was capable of performing medium work. See AT 22. Plaintiff

argues that her obesity, combined with her chemotherapy treatment and other issues, "contributed to and exacerbated her shortness of breath and fatigue" in 2019. (ECF No. 9 at 8.) However, she does not point to record evidence of this or otherwise show that her obesity caused greater limitations than reflected in the RFC prior to the expiration of her insured status.

The court concludes that plaintiff's assessed RFC was adequately explained and grounded in substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is GRANTED;

and

3. Judgment is entered for the Commissioner.

Dated:  September 10, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/davi2071.dib.ckd